[801 NE2d 840, 769 NYS2d 464]

In the Matter of EDWARD A. ZELINSKY et al., Appellants, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.

Argued October 15, 2003; decided November 24, 2003

86

## POINTS OF COUNSEL

*Edward A. Zelinsky,* New Haven, Connecticut, and *Doris Zelinsky,* appellants pro se. I. On the facts of this case, the "convenience of the employer" doctrine caused double taxation in violation of both the Commerce Clause's fair apportionment requirement and the due process prohibition on extraterritorial taxation. (*Complete Auto Tr., Inc. v Brady,* 430 US 274; *Central Greyhound Lines, Inc. v Mealey,* 334 US 653; *Oklahoma Tax Commn. v Jefferson Lines, Inc.,* 514 US 175; *Goldberg v Sweet,* 488 US 252; *Tennessee Gas Pipeline Co. v Urbach,* 96 NY2d 124; *City of New York v State of New York,* 94 NY2d 577; *Allied-Signal, Inc. v Director, Div. of Taxation,* 504 US 768; *Container Corp. of Am. v Franchise Tax Bd.,* 463 US 159; *Asarco Inc. v Idaho State Tax Commn.,* 458 US 307; *Oklahoma Tax Commn. v Chickasaw Nation,* 515 US 450.) II. In sustaining the double tax assessed against petitioner under the employer convenience doctrine, the court below misapplied and disregarded the relevant constitutional decisions. (*Tennessee Gas Pipeline Co. v Urbach,* 96 NY2d 124; *Oklahoma Tax Commn. v Jefferson Lines, Inc.,* 514 US 175; *Matter of Speno v Gallman,* 35 NY2d 256; *Central Greyhound Lines, Inc. v Mealey,* 334 US 653; *Goldberg v*

*Sweet,* 488 US 252; *Moorman Mfg. Co. v Bair,* 437 US 267; *Curry v McCanless,* 307 US 357; *Matter of Colleary v Tully,* 69 AD2d 922.) III. New York's income tax treatment of nonresident athletes confirms the validity of the taxpayers' constitutional argument and belies the analysis of the court below including the benefits theory. (*Matter of Speno v Gallman,* 35 NY2d 256.) IV. As a matter of policy, the employer convenience doctrine is historically obsolete and economically self-destructive.

*Eliot Spitzer, Attorney General,* Albany (*Julie S. Mereson, Caitlin J. Halligan* and *Andrew D. Bing* of counsel), for Commissioner of Taxation and Finance, respondent. New York's taxation of all of petitioner's income from his New York City law professorship pursuant to the convenience of the employer rule is consistent with the Commerce Clause and the Due Process Clause. (*Brady v State of New York,* 80 NY2d 596, 509 US 905; *New York ex rel. Cohn v Graves,* 300 US 308; *Lawrence v State Tax Commn.,* 286 US 276; *Shaffer v Carter,* 252 US 37; *Oklahoma Tax Commn. v Chickasaw Nation,* 515 US 450; *International Harvester Co. v Wisconsin Dept. of Taxation,* 322 US 435; *Travis v Yale & Towne Mfg. Co.,* 252 US 60; *Curry v McCanless,* 307 US 357; *Matter of Speno v Gallman,* 35 NY2d 256; *Matter of Phillips v New York State Dept. of Taxation & Fin.,* 267 AD2d 927, 94 NY2d 763.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Rita D. Dumain* and *Robert J. Firestone* of counsel), for City of New York, amicus curiae. The State can tax all of petitioner's salary derived from his employment at Cardozo Law School, regardless of whether he takes work home for his personal convenience. (*Armco, Inc. v Hardesty,* 467 US 638; *Austin v New Hampshire,* 420 US 656; *Oklahoma Tax Commn. v Chickasaw Nation,* 514 US 450; *Quill Corp. v North Dakota,* 504 US 298; *Moorman Mfg. Co. v Bair,* 437 US 267; *Hans Rees' Sons v North Carolina ex rel. Maxwell,* 283 US 123; *Wisconsin v J.C. Penney Co.,* 311 US 435; *American Trucking Assns., Inc. v Scheiner,* 483 US 266; *West Lynn Creamery, Inc. v Healy,* 512 US 186.)

*Richard Blumenthal, Attorney General,* Hartford, Connecticut (*Jonathon L. Ensign* of counsel), for Richard Blumenthal, Attorney General of the State of Connecticut, amicus curiae. I. As a constitutional matter, Connecticut, the state of residence, has primary and plenary taxing authority over the income earned by its residents from services performed by them in Connecticut. II. The Commerce Clause requires that income taxes be

fairly apportioned so as to avoid multiple taxation. (*Central Greyhound Lines, Inc. v Mealey,* 334 US 653; *Commonwealth Edison Co. v Montana,* 453 US 609; *Complete Auto Tr., Inc. v Brady,* 430 US 274.) III. The Due Process Clause requires that income taxes be fairly apportioned to prevent the extraterritorial taxation of nonresidents on income earned outside the borders of the taxing state. (*Allied-Signal, Inc. v Director, Div. of Taxation,* 504 US 768; *Container Corp. of Am. v Franchise Tax Bd.,* 463 US 159; *Asarco Inc. v Idaho State Tax Commn.,* 458 US 307.)

*McDermott, Will & Emery,* New York City (*Peter L. Faber* of counsel), for The Partnership for New York City, amicus curiae. I. The convenience of the employer test makes employment tax withholding for nonresident workers impossible, because a single day in New York can result in 100% New York taxation, regardless of where services are actually performed. (*Shaffer v Carter,* 252 US 37; *Matter of Burke v Bragalini,* 10 AD2d 654; *Matter of Burke v Murphy,* 33 AD2d 581; *Matter of Carpenter v Chapman,* 276 App Div 634; *Matter of Fass v Tax Commn. of State of N.Y.,* 68 AD2d 977, 50 NY2d 932; *Matter of Kitman v State Tax Commn.,* 92 AD2d 1018; *Matter of Simms v Procaccino,* 47 AD2d 149; *Matter of Tuohy v Procaccino,* 51 AD2d 630; *Matter of Speno v Gallman,* 35 NY2d 256.) II. Applying the convenience of the employer test to nonresidents with a principal place of business outside New York may result in taxing income out of all proportion to the worker's contacts with, and benefits from, New York State in violation of the United States Constitution. (*Shaffer v Carter,* 252 US 37; *Hans Rees' Sons v North Carolina ex rel. Maxwell,* 283 US 123; *Matter of British Land [Md.] v Tax Appeals Trib. of State of N.Y.,* 85 NY2d 139; *Matter of Linsley v Gallman,* 38 AD2d 367; *Harrah Ind. School Dist. v Martin,* 440 US 194; *Matter of Colleary v Tully,* 69 AD2d 922.)

**OPINION OF THE COURT**

Chief Judge KAYE.

The taxpayer, a professor at Cardozo School of Law in New York City, contends that New York State may not constitutionally tax the entirety of his income because he performed some of his work at his home in Connecticut. We disagree and uphold the challenged tax.

I.

During the academic semesters in 1994 and 1995, petitioner-taxpayer commuted to New York three days each work week to

teach his classes and meet with students. On the other two days, he stayed at home, where he prepared examinations, wrote student recommendations, and conducted scholarly research and writing. When school was not in session, and during his sabbatical leave in the fall semester of 1995, he worked exclusively at home.

On the 1994 and 1995 New York State nonresident income tax returns filed jointly by the taxpayer and his wife,[1] he apportioned to New York the percentage of his total salary that reflected the number of days he commuted to the law school, allocating the remainder to Connecticut. The New York State Department of Taxation and Finance issued notices of deficiency for both years, maintaining that the entire law school salary was subject to taxation by New York. Applying the "convenience of the employer" test, the Department determined that the days that the taxpayer worked at his Connecticut residences should be counted as New York work days because he stayed at home for his own convenience and was not obligated by his employer to work outside New York. The portion of his salary that he allocated to the days he worked at home was also taxed by Connecticut, which did not provide a credit for the taxes assessed by New York.

Petitioner contested the deficiencies and also sought a refund for taxes paid on salary earned during his sabbatical leave, which he had forgotten to allocate to Connecticut. He claimed, as he does now, that application of the convenience of the employer test to him, resulting in New York's taxation of salary earned on the days he worked at home, violates the Commerce and Due Process Clauses of the Federal Constitution. An Administrative Law Judge rejected those constitutional challenges, as did the Tax Appeals Tribunal. The taxpayer then commenced an article 78 proceeding in the Appellate Division, pursuant to Tax Law § 2016. The Appellate Division confirmed the administrative determination and dismissed the petition. We now affirm.

## II.

Although a state may tax all the income of its residents, even income earned outside the taxing jurisdiction, it may constitutionally tax nonresidents only on their income derived from

---

1. Because of the joint return, she too is named as a petitioner in this proceeding, but her income is not relevant to this appeal.

sources within the state (*see Shaffer v Carter*, 252 US 37, 57 [1920]). In New York, the income of nonresidents is thus taxed by the State if it is "derived from or connected with New York sources" (*see* Tax Law § 601 [e] [1]; § 631 [a] [1]).[2] New York source income includes income attributable to a business, trade, profession or occupation carried on in this state (*see* Tax Law § 631 [b] [1] [B]). When a nonresident works partly in New York and partly in another state, the New York source income must be determined by apportionment and allocation according to regulations of the Commissioner of Taxation and Finance (*see* Tax Law § 631 [c]).

The Commissioner's regulations generally provide that if a nonresident employee performs services for an employer both within and without New York State, the portion of his or her income derived from New York sources, and thus apportioned and allocated to New York, consists of the ratio of total days worked in New York to total days worked both in and out of the state (*see* 20 NYCRR 132.18 [a]). Such apportionment and allocation, however, are limited by the convenience of the employer test, which states that "any allowance claimed for days worked outside New York State must be based upon the performance of services which of necessity, as distinguished from convenience, obligate the employee to out-of-state duties in the service of his employer" (20 NYCRR 132.18 [a]).[3] Accordingly, nonresidents employed in New York who work at home when not required to do so by their employers must treat those days as if they had been present at their workstation in New York, resulting in New York source income. That is the proposition being tested by the present appeal.

### III.

Although the dormant Commerce Clause limits the power of states to erect barriers against interstate trade, a challenged tax will generally satisfy constitutional requirements if it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State" (*Complete Auto Tr., Inc. v Brady*, 430 US 274, 279 [1977]).

---

**2.** New York residents, by contrast, are taxed on their worldwide income (*see* Tax Law § 611 [a]; § 612 [a]; Internal Revenue Code [26 USC] § 61 [a]; § 62 [a]).

**3.** The "convenience of the employer" would therefore more aptly be called the "necessity of the employer" test.

Here, the taxpayer challenges only the second prong of this four-part test—that the tax be fairly apportioned—conceding that the remaining three criteria are met. The central purposes of the fair apportionment requirement are "to ensure that each State taxes only its fair share of an interstate transaction" (*Goldberg v Sweet*, 488 US 252, 260-261 [1989]) and to "minimize the likelihood that an interstate transaction will be improperly burdened by multiple taxation" (*Tennessee Gas Pipeline Co. v Urbach*, 96 NY2d 124, 133 [2001]).

A tax is fairly apportioned if it is both internally and externally consistent. To be internally consistent, the tax must be structured so that if every state were to impose an identical tax, no multiple taxation would result. Here, the taxpayer concedes that if Connecticut were to adopt the convenience of the employer test, he would not be subject to double taxation, because in that case Connecticut, after initially taxing the worldwide income of its resident, would provide a credit for the taxes paid to New York for the days he worked at home for his own convenience. His sole claim, therefore, is that the challenged tax is not externally consistent.

External consistency looks "to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State. . . . [T]he threat of real multiple taxation . . . may indicate a State's impermissible overreaching" (*Oklahoma Tax Commn. v Jefferson Lines, Inc.*, 514 US 175, 185 [1995] [internal citations omitted]). External consistency is "essentially a practical inquiry" (*Goldberg*, 488 US at 264) for determining "whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed" (*id.* at 262). No particular apportionment formula or method need be used to satisfy constitutional requirements, "and when a State has chosen one, an objecting taxpayer has the burden to demonstrate 'by clear and cogent evidence' that 'the income attributed to the State is in fact out of all appropriate proportions to the business transacted . . . in that State, or has led to a grossly distorted result' " (*Jefferson Lines*, 514 US at 195, quoting *Moorman Mfg. Co. v Bair*, 437 US 267, 274 [1978] [other internal quotation marks omitted]).

## IV.

In applying these principles, we need decide only whether the convenience of the employer test is constitutional as applied to the facts of this case.

The convenience test was originally adopted to prevent abuses arising from commuters who spent an hour working at home every Saturday and Sunday and then claimed that two sevenths of their work days were non-New York days and that two sevenths of their income was thus non-New York income, and either free of tax (if the state of their residence had no income tax) or subject to a lower rate than New York's.[4] In the present case, the taxpayer's efforts to reduce the amount of tax owed to New York on his New York source income earned during the work week raise similar concerns.[5]

We note at the outset that many busy professionals, at the conclusion of a full day, routinely bring work home for the evenings or weekends. Even when undertaken by an out-of-state commuter such as petitioner, this work cannot transform employment that takes place wholly within New York into an interstate business activity subject to the Commerce Clause. Cardozo Law School provides educational services to its students in New York City, which is where the taxpayer performs the primary duties of his occupation—teaching classes and meeting with students. The work he chooses to do at home is thus inextricably intertwined with the business of his New York law school, and cannot convert his employer's New York business into an interstate one when Cardozo did not employ him to carry out any of the school's business activities in Connecticut.

The taxpayer's reliance on *City of New York v State of New York* (94 NY2d 577 [2000]) is therefore misplaced. In that case, we rejected the claim that a tax on out-of-state commuters did

---

**4.** Of course, in the absence of the convenience test, opportunities for fraud are great and administrative difficulties in verifying whether an employee has actually performed a full day's work while at home are readily apparent.

**5.** We reject his claim that the convenience test no longer has any justifiable basis because Connecticut has since 1991 imposed an income tax. Insofar as the test "serves to protect the integrity of the apportionment scheme by including income as taxable" when the income results from services derived from New York sources but performed out-of-state "to effect a subterfuge" (*Matter of Colleary v Tully*, 69 AD2d 922, 923 [3d Dept 1979]), the same incentive for tax avoidance exists when, as here, a neighboring state imposes tax at a lower rate than New York as when the state imposes no income tax at all.

not implicate the Commerce Clause, explaining that the commute of tens of thousands of out-of-state residents "into New York City on a daily basis, earning and spending part of their income in New York City, while paying the commuter tax" clearly impacted interstate commerce (94 NY2d at 597). The critical distinction between *City of New York* and the instant case, however, is that in *City of New York*, the tax at issue was imposed on the activity of commuting, not on the individual as a commuter. Here, the tax is imposed on income derived from the activity of teaching, not on the individual who is reading in his study in Connecticut.[6]

Nor can petitioner's circumstances be likened to the bus in *Central Greyhound Lines of N.Y. v Mealey* (334 US 653 [1948]), where the Supreme Court struck down an unapportioned gross receipts tax imposed on the sale of transportation services between points within New York because the bus traveled in large part over routes using out-of-state highways. In *Central Greyhound*, the risk of multiple taxation imposed by each of the various states through which the bus of necessity passed unfairly burdened interstate commerce, which was clearly impacted by the interstate travel of the bus. Here, by contrast, all of petitioner's teaching is accomplished in New York and his voluntary choice to bring auxiliary work home to Connecticut cannot transform him into an interstate actor.

■ "The dormant Commerce Clause protects markets and participants in markets, not taxpayers as such" (*General Motors Corp. v Tracy*, 519 US 278, 300 [1997]). The taxpayer's crossing of state lines to do his work at home simply does not impact upon any interstate market in which residents and

---

**6.** The taxpayer also maintains that he is a "telecommuter" who, pursuant to *Matter of Allen v Commissioner of Labor* (100 NY2d 282 [2003]), may be taxed only according to the location in which he is physically present on any given day. *Allen*, however, involved neither taxes, nor the Commerce Clause, nor apportionment. Rather, in *Allen* we analyzed whether an employee physically present in Florida who "telecommuted" to New York by linking her laptop computer to her employer's Internet connection over telephone lines was "localized" in New York within the meaning of the Unemployment Insurance Law. In concluding that she was not, we emphasized that the relevant uniform statute contained a definition of "employment" that served in part to advance the purpose of allocating all the employment of an individual to one state and not to divide it "among the several States in which he might perform services" (*Matter of Mallia*, 299 NY 232, 238 [1949]; *see also* Labor Law § 511). Here, by contrast, the Commerce Clause requires that the tax be fairly apportioned among the various states from which one's income is derived.

nonresidents compete so as to implicate the Commerce Clause. On these facts, the convenience of the employer test neither unfairly burdens interstate commerce nor discriminates against the free flow of goods in the marketplace. Nor does it result in differential treatment benefitting in-state interests at the expense of out-of-state interests. Rather, the convenience test serves merely to equalize tax obligations among residents and nonresidents, preventing nonresidents from manipulating their New York tax liability by choice of auxiliary work location in a manner unavailable to similarly situated New York resident employees. Since a New York resident would not be entitled to any special tax benefits for similar work performed at home, neither should a nonresident (see Matter of Speno v Gallman, 35 NY2d 256, 259 [1974]).

Allowing this taxpayer to allocate his income to Connecticut when he stays home to do his work in connection with his teaching activity would enable him to avoid paying taxes that his colleagues who do that work at home in New York—or at the law school—pay. The Constitution does not require that a nonresident who does not opt for the personal convenience of taking work home rather than traveling into work every day be taxed at a higher effective tax rate than one who does. The State need not subsidize such personal convenience, while at the same time discouraging commuting into New York City and facilitating erosion of the tax base.

Even presuming that petitioner's work at home sufficiently impacts upon interstate business activity as to implicate the Commerce Clause, because the entirety of the taxpayer's salary is derived from New York sources, New York's tax on his non-resident income is fairly apportioned. As a law professor, the taxpayer is primarily engaged in the business of teaching. It is for this that Cardozo hired him and for this that he is paid. It is thus readily apparent that he is not paid his salary in exchange for working five days per week, or three, or seven. Nor is he paid an hourly or daily wage. As long as his work is completed, he receives his full salary, whether he completes his work during the three days he comes to the office, or at home, or on the weekend. If he finishes all his work during the three days he commutes to the law school, and stays home without working on the other two days, he is paid no less. And if he ends up working five days a week in addition to every weekend, he is paid no more. From the perspective of his employer, as long as he performs his teaching responsibilities as scheduled, it matters not when or where he performs his ancillary functions.

The taxpayer is able to earn his salary—all of it—because of the benefits he receives every day from New York. He benefits directly from an employment opportunity and an office here. He benefits from a salary on every day that he works, which he is able to earn entirely within this state if he so chooses. As the Appellate Division noted, even his scholarly writings, drafted at home, attach prominence to his position as a professor at Cardozo Law School. New York thus provides a host of tangible and intangible protections, benefits and values to the taxpayer and his employer, including police, fire and emergency health services, and public utilities. Petitioner's election to absent himself from the locus of his New York employment does not diminish what New York provides in order to enable him to earn that income. New York may require contributions from him because he thus "realiz[ed] current pecuniary benefits under the protection of the government" (*Shaffer v Carter*, 252 US 37, 51 [1920]), and the tax imposed need not "bear an exact relation to the services actually provided to the individual taxpayer" (*Matter of Tamagni v Tax Appeals Trib.*, 91 NY2d 530, 544 [1998]).

Nevertheless, petitioner maintains that a constitutional violation is evident because his income has been taxed by two jurisdictions. But the mere potential for or actual existence of double taxation does not automatically transgress the Commerce Clause if, as here, the challenged tax is in fact fairly apportioned. For as the Tax Appeals Tribunal recognized, it was his own choice to allocate his income that created the threat of double taxation, not the convenience rule.

In *Tamagni*, we upheld the application of New York's resident income tax to statutory residents of this state who, as domiciliaries of New Jersey, were subject to resident income tax in New Jersey on certain income also taxed by New York. Since each tax was permissibly imposed under a different theory—New York validly taxed its statutory residents and New Jersey validly taxed its domiciliaries—the New York tax did not violate the Commerce Clause, even though its effect was double taxation. Similarly, in the instant case, New York has validly taxed the income of a nonresident derived from New York sources, while Connecticut has, as it may, taxed the income of its resi-

dent.[7] "The multiple taxation placed upon interstate commerce by such a confluence of taxes is not a structural evil that flows from either tax individually, but it is rather the accidental incident of interstate commerce being subject to two different taxing jurisdictions" (*Jefferson Lines*, 514 US at 192 [citations and internal quotation marks omitted]).

Since the New York tax is fairly apportioned, the resultant double taxation does not serve to invalidate the tax. For while a state may indeed constitutionally tax the worldwide income of its residents, it will typically provide a credit for income tax paid to another state—as New York does. Here, it is Connecticut's refusal to provide a credit to its resident for all of the nonresident income tax that the taxpayer paid to New York that has created the threat of double taxation. It is not, however, the "purpose of the Commerce Clause to protect state residents from their own state taxes" (*Goldberg*, 488 US at 266).

Since the New York tax imposed did not "reach[ ] beyond that portion of value . . . fairly attributable to economic activity within the taxing State" (*Jefferson Lines*, 514 US at 185), the taxpayer has failed to demonstrate by clear and cogent evidence that the income attributed to New York was in fact out of all appropriate proportion to the business transacted here or has led to a grossly distorted result (*see id.* at 195).

## V.

The Due Process Clause places two restrictions on a state's power to tax income generated by interstate activities. First, it "requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax" (*Quill Corp. v North Dakota*, 504 US 298, 306 [1992] [citation omitted]). Second, the "income attributed to the State for tax purposes must be rationally related to values connected with the taxing State" (*Moorman*, 437 US at 273 [citation and internal quotation marks omitted]). A state, therefore, may not tax value earned outside its borders (*see e.g. Allied-Signal, Inc. v Director, Div. of Taxation*, 504 US 768, 777 [1992]). Rather, the tax imposed must "bear[ ] fiscal relation" to "opportunities which [the state] has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly,

---

7. Connecticut may and does tax petitioner's income because he is its resident, not because two out of five of his work days were allegedly sourced in Connecticut.

civilized society. . . . The simple but controlling question is whether the state has given anything for which it can ask return" (*Wisconsin v J.C. Penney Co.*, 311 US 435, 444 [1940]).

■ Here, petitioner—both because of his physical presence in New York and because he has "purposefully avail[ed] [him]self of the benefits of an economic market in the forum State" (*Quill*, 504 US at 307)—clearly has a "minimum connection" to New York by virtue of his employment at Cardozo School of Law. Moreover, based on the same protections, opportunities and benefits conferred on him by New York as to satisfy the Commerce Clause, the convenience of the employer test as applied here does not tax "extraterritorial values" (*Container Corp. of Am. v Franchise Tax Bd.*, 463 US 159, 164 [1983] [internal quotation marks omitted]). Rather, as the Appellate Division recognized, an ample foundation to justify the tax is provided by the host of tangible and intangible benefits flowing directly and indirectly to petitioner from New York, the location of the law school that supplies his total relevant income.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Judgment affirmed, with costs.