*143
 
 OPINION OF THE COURT
 

 Levine, J.
 

 The issue on this appeal is whether the State violated the Due Process and Commerce Clauses of the United States Constitution by assessing a corporation franchise tax
 
 (see,
 
 Tax Law art 9-A) on about 64% of petitioner’s gain from its sale of commercial real property in Baltimore, Maryland, in 1984.
 

 According to the essentially uncontested evidence and as found by the State Tax Appeals Tribunal, petitioner was incorporated in Delaware in May 1973. Petitioner was an indirect, six times removed subsidiary of British Land Company Pic., an international real estate investment company based in London. British Land Company owned and operated commercial real estate through subsidiary corporations in various parts of the world. A primary goal of petitioner was to purchase property that would appreciate in value.
 

 Shortly after its incorporation, petitioner purchased for some $4.8 million all the capital stock of a Maryland corporation which owned the subject real property here, a 27-story office building in downtown Baltimore. The building was encumbered by a $6.6 million deed of trust. The stock purchase was financed by a $4.7 million loan from a commercial bank, guaranteed by British Land Company, and by a $115,-000 loan from a local Baltimore bank. W.C. Pinkard & Co. (Pinkard), a Baltimore real estate management firm, was retained to operate the building.
 

 In 1980, pursuant to a decision by John Weston Smith, a vice-president of petitioner, the fee interest in the land of the Baltimore office building property was acquired. The strategy for the acquisition was developed by Pinkard and the purchase was actually made in the name of another British Land Company indirect subsidiary.
 

 Some time after the fee of the Baltimore property had been acquired and the building fully rented, petitioner and British Land Company determined that there was a weakening in the
 
 *144
 
 Baltimore office rental market and that the property should be sold. The sale was eventually effected in March of 1984, as a sale of stock of newly formed subsidiaries to which the interests in the building and fee were transferred. Between the acquisition of the Baltimore property in 1973 and its sale in 1984, petitioner suffered operational losses on the property necessitating loans from other subsidiaries of British Land Company. Interest on the loans was accumulated rather than paid.
 

 In 1982, petitioner first entered the real estate market in this State by acquiring an office building at 90 Broad Street in New York City for $27.6 million. Petitioner initially structured the transaction as a purchase of the capital stock of the corporate title holder of the fee to the land and building. The acquisition was financed by a bank loan of $40 million to cover the purchase price and any deficit and the costs of improvements. The loan was taken by British Land Company and guaranteed by petitioner, secured by a mortgage on the property. The guarantee by its terms was unenforceable against petitioner’s Baltimore property, the sale of which had already been decided upon.
 

 Petitioner appointed a New York City real estate management firm to act as its agent for rentals at the 90 Broad Street office building. Beginning in 1984, petitioner’s vice-president Smith occupied office space at the New York City building, from which he managed petitioner’s affairs and also the United States properties of other British Land Company subsidiaries.
 

 The State Department of Taxation and Finance issued notices of deficiency for the 1984 taxable year requiring petitioner to pay State corporation franchise taxes on a portion of the approximately $13 million capital gain on the sale of the Baltimore property, as determined by the statutory formula for allocation of the New York income of multistate corporate businesses operating in New York (Tax Law § 210 [3]). Essentially, the New York statutory formula determines the appropriate New York percentage share of total corporate net income by averaging the New York fractions of total tangible property, payroll and gross receipts, factoring in twice the New York fraction of total gross receipts (see, Tax Law § 210 [3] [a] [4]). The fact that the 1984 average value of petitioner’s 90 Broad Street New York City property was about three times the average value of its Baltimore property contributed
 
 *145
 
 significantly to a final allocation of petitioner’s income to New York of 64%. Thus, petitioner was charged with over $8.3 million of New York income on its $13 million gain from the sale of the Baltimore property, resulting in a total tax of some $978,000.
 

 On administrative appeal to the State Tax Appeals Tribunal, the assessment was upheld. The Tribunal found that, during the 1984 taxable year, petitioner was conducting a unitary business with respect to its New York and Maryland properties. It based that determination on the existence of petitioner’s functional integration, centralization of management and economies of scale, as shown by the following factors: (1) a flow of value to both properties which was not at arm’s length, in that petitioner financed the acquisitions of both by loans and guarantees, without additional fees or other consideration charged against the properties; (2) centralization of management in the person of petitioner’s vice-president Smith who made the major strategic business decisions regarding the properties and oversaw the performance of the separate management firms in conducting the day-to-day operations of the two properties; and (3) petitioner’s engagement in the same line of business at its New York and Baltimore properties, the investment in commercial rental real estate. The Tribunal further concluded that petitioner had failed to sustain its burden of demonstrating that the allocation formula applied to determine the New York portion of the gain from the sale of the Baltimore property resulted in extraterritorial income being taxed.
 

 On review, the Appellate Division confirmed the determination and dismissed the petition (202 AD2d 867). The Court held that there was substantial evidence to support the Tax Appeals Tribunal’s finding that petitioner’s New York City and Baltimore operations were a unitary business. It also held that petitioner had failed to satisfy its heavy burden of showing that the application of the statutory apportionment formula resulted in taxing extraterritorial values. The Court concluded that petitioner’s only evidence in support of that claim was the gross disproportionality of the apportionment results in comparison to petitioner’s New York income as shown in a separate geographic accounting, and that such evidence was insufficient as a matter of law. This appeal is now before us as of right because of the substantial constitutional questions at issue.
 

 
 *146
 
 I.
 

 The Due Process and Commerce Clauses of the United States Constitution prevent a State from taxing income of a nondomiciliary corporation arising out of extraterritorial activities unless there is a "minimal connection” or "nexus” between the outside activities and the taxing State, and a "rational relationship between the income attributed to the State and the intrastate values of the enterprise”
 
 (Mobil Oil Corp. v Commissioner of Taxes,
 
 445 US 425, 436-437;
 
 see also, Allied-Signal, Inc. v Director, Div. of Taxation,
 
 504 US 768, 772-773;
 
 Container Corp. v Franchise Tax Bd.,
 
 463 US 159, 165-166). Under a long and unbroken line of Supreme Court precedent, if the nondomiciliary corporation engages in business in the taxing State (concededly the case here), the taxing State need not identify and select out its specific intrastate income-producing activities so long as the corporation is operating a unitary business enterprise and the income is derived from the unitary business; it may then apply an apportionment formula to tax an appropriate proportional share of the interstate income of the enterprise
 
 (see, Underwood Typewriter Co. v Chamberlain,
 
 254 US 113, 120-121;
 
 Butler Bros. v McColgan,
 
 315 US 501, 509;
 
 see also, Allied-Signal, Inc. v Director, Div. of Taxation,
 
 504 US, at 779-780,
 
 supra).
 

 A correlative "limiting principle” of the right of each State to tax the interstate income of a multistate corporation’s unitary business by means of a formula apportionment is that the State may not tax income "that cannot in fairness be attributed to the taxpayer’s activities within the State”
 
 (Allied-Signal, Inc. v Director, Div. of Taxation,
 
 504 US, at 780,
 
 supra).
 
 Thus, a formula-based tax on income may be struck down if " 'the income attributed to the State is in fact "out of all appropriate proportions to the business transacted [by the taxpayer] in that State” ’ ”
 
 (Container Corp. v Franchise Tax Bd.,
 
 463 US, at 170,
 
 supra; see, Hans Rees’ Sons v North Carolina,
 
 283 US 123, 135) or if application of the apportionment formula has " ' "lead to a grossly distorted result” ’ ”
 
 (Container Corp. v Franchise Tax Bd.,
 
 463 US, at 170,
 
 supra).
 
 The taxpayer bears the burden of showing by " 'clear and cogent evidence’ that [application of the formula] results in extraterritorial values being taxed”
 
 (Butler Bros. v McColgan,
 
 315 US, at 507,
 
 supra).
 

 
 *147
 
 II.
 

 Applying the foregoing principles here, we have no difficulty in upholding the Tax Appeals Tribunal’s conclusion that petitioner’s New York City and Baltimore real estate activities were part of a unitary business — the first prerequisite of a constitutionally valid application of an apportionment of income formula. That determination may not be disturbed if the agency "applied the correct standards to the case; and if it did, * * * its judgment 'was within the realm of permissible judgment’ ”
 
 (Container Corp. v Franchise Tax Bd.,
 
 463 US, at 176,
 
 supra).
 

 As previously noted, the Tax Appeals Tribunal found a unitary business here because of the presence of petitioner’s functional integration, centralization of management and economies of scale. These factors in turn were supported by the evidence that the New York City property acquisition loan transaction was not at arm’s length, that petitioner’s vice-president oversaw the management and made the strategic decisions with respect to both properties and that the New York City and Baltimore activities were in the same line of business.
 

 "The hallmarks of an acquisition that is part of the taxpayer’s unitary business continue to be functional integration, centralization of management, and economies of scale.
 
 Container Corp.
 
 clarified that these essentials could respectively be shown by: transactions not undertaken at arms length, 463 U.S., at 180, n. 19; a management role by the parent that is grounded in its own operational expertise and operational strategy,
 
 ibid.;
 
 and the fact that the corporations are engaged in the same line of business,
 
 id.,
 
 at 178.”
 
 (Allied-Signal, Inc. v Director, Div. of Taxation,
 
 504 US, at 789,
 
 supra.)
 

 Thus, the Tribunal applied the correct standard and its determination of a unitary business was well within the range of permissible judgment, there being substantial evidence in the record to support its findings.
 

 III.
 

 The more difficult question presented here is whether petitioner met its heavy burden of showing, by clear and cogent
 
 *148
 
 evidence, that application of the statutory formula attributes New York income to petitioner "out of all appropriate proportion to the business transacted by [it] in that State”
 
 (Hans Rees’ Sons v North Carolina,
 
 283 US, at 135,
 
 supra
 
 [quoted in
 
 Container Corp.,
 
 463 US, at 181,
 
 supra]).
 
 Put another way, did petitioner establish that New York "has applied a method [of apportionment], which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction”
 
 (Hans Rees’ Sons v North Carolina, supra,
 
 at 134)?
 

 The New York statutory formula must be deemed fair on its face. It bases apportionment of income on the averages of New York’s proportionate shares of an interstate corporation’s total tangible property, payroll and gross receipts. Using a State’s proportionate share of payroll, tangible property and gross receipts as the appropriate criteria for establishing the intrastate share of total net income is presumably valid because these factors "appear in combination to reflect a very large share of the activities by which value is generated”
 
 (Container Corp. v Franchise Tax Bd.,
 
 463 US, at 183,
 
 supra).
 
 The New York formula varies in only one respect from the tripartite formula applied most commonly throughout the United States and upheld in
 
 Container Corp. (supra),
 
 that is, New York requires that the fractional State share of gross receipts be averaged in twice in calculating New York’s total average share of the relevant economic indicia. It is not claimed here that this variation materially affects the facial validity of the New York apportionment formula.
 

 Moreover, like the Appellate Division, we reject petitioner’s interpretation of
 
 Hans Rees’ Sons (supra)
 
 and
 
 People ex rel. Sheraton Bldgs. v Tax Commn.
 
 (15 AD2d 142,
 
 affd
 
 13 NY2d 802), as holding that a tax on extraterritorial values can be established simply by showing that the taxpayer’s formula-based intrastate income is many times greater than the income reflected in a separate geographical accounting. Application of the apportionment formula has been upheld even when it has resulted in converting substantial losses shown in a separate accounting into net profits of even greater amounts
 
 (see, Exxon Corp. v Wisconsin Dept. of Revenue,
 
 447 US 207;
 
 Butler Bros. v McColgan,
 
 315 US 501,
 
 supra).
 
 As the Supreme Court reasoned in
 
 Butler Bros, v McColgan,
 
 the taxpayer’s California division contributed to the support of the taxpayer’s centralized management and central purchasing. Thus, it was reasonable to infer that the California operations helped to
 
 *149
 
 create the taxpayer’s net profit nationally, in the absence of evidence that "factors which are responsible for that [over-all] net income are present in other States but not present in California” (315 US, at 509,
 
 supra).
 

 In our view, however, the Appellate Division erred in concluding that the only evidence submitted by petitioner that the application of the formula resulted in taxing extraterritorial values was the gross disproportionality (2,200%) of the gain on the Baltimore sale attributed to New York, $8.3 million, as compared to the net income of petitioner’s New York operations shown in a separate geographical accounting.
 

 In addition to that marked discrepancy revealed by a separate accounting, the evidence showed, and the Tax Appeals Tribunal cited, four factors principally responsible for the appreciation in value of petitioner’s Baltimore property giving rise to the gain from its sale: (1) an improved economic climate in downtown Baltimore, due to the Baltimore Harbor Redevelopment Project; (2) sound management by Pinkard, resulting in high occupancy rates; (3) renovations to the building; and (4) acquisition of the fee interest in the property. The record clearly points to the conclusion that these factors, and any corporate decision-making involving them, occurred and had their economic impact on the Baltimore office building prior to the commencement of petitioner’s activities in New York upon acquisition of the 90 Broad Street, New York City, property in 1982. Indeed, the decision to sell the Baltimore office building was made before the purchase of 90 Broad Street. In this respect, therefore, and particularly because the single gain from the sale of the Baltimore property so dwarfed petitioner’s other net income, clear and cogent evidence supports the conclusion that two thirds of petitioner’s $13 million gain on the sale of the Baltimore property "cannot in fairness be attributed to [petitioner’s] activities within [New York] State”
 
 (Allied-Signal, Inc. v Director, Div. of Taxation,
 
 504 US, at 780,
 
 supra).
 

 Petitioner here submitted the proof which the taxpayer failed to show in
 
 Butler Bros.,
 
 i.e., that the gain on the Baltimore property was attributable in far larger part to "factors * * * present in other States but not present in [New York]”
 
 (Butler Bros, v McColgan,
 
 315 US, at 509,
 
 supra).
 
 The Tax Appeals Tribunal cited no significant countervailing flow of value to petitioner’s Maryland operation from its activities or the strategic decisions of its officers taking place outside of
 
 *150
 
 Maryland. Respondents cannot rely on benefits the Baltimore operations may have received from British Land Company, petitioner’s parent, or from British Land Company’s subsidiaries otherwise unrelated to petitioner. The State elected to base the tax treatment of the Baltimore property sale transaction as part of a unitary business strictly limited to petitioner as a single corporate entity with its own individual property holdings, rather than as part of some unitary real estate empire of British Land Company. Therefore, contributions from British Land Company or its other subsidiaries to the operation of the Baltimore office building or to its appreciation in value cannot be the basis for attributing additional New York income to the gain from the sale of that property.
 

 There was one further area of proof of the taxing of extraterritorial value by application of the statutory formula here. The taxpayer’s unitary real estate business inventory consisted of only two properties, one in New York and one in Maryland. The New York property was a relatively recent acquisition, but at a significantly greater cost and of an average value during the taxable year of more than three times that of the Maryland property. Under these circumstances, the extremely marked differences in value inevitably had a distorting effect on the application of the statutory apportionment formula
 
 (see, Container
 
 Corp.
 
 v Franchise Tax Bd.,
 
 463 US, at 182-183,
 
 supra).
 

 For all the foregoing reasons, we conclude that the Tax Appeals Tribunal’s determination must be annulled and the matter remanded to the Tribunal for a redetermination of an allocation of petitioner’s income more fairly reflecting its business activities in this State
 
 (see,
 
 Tax Law § 210 [8]).
 

 Accordingly, the judgment should be reversed, with costs, respondent Tax Appeals Tribunal’s determination annulled and the matter remitted to the Appellate Division, Third Department, with directions to remand to respondent Tax Appeals Tribunal for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Judgment reversed, etc.