[829 NE2d 276, 796 NYS2d 312]

In the Matter of THOMAS L. HUCKABY, Appellant, v NEW YORK STATE DIVISION OF TAX APPEALS, TAX APPEALS TRIBUNAL, et al., Respondents.

Argued January 5, 2005; decided March 29, 2005

**POINTS OF COUNSEL**

*McDermott Will & Emery LLP,* New York City (*Peter L. Faber, Margaret C. Wilson* and *Richard A. Leavy* of counsel), for appellant. I. This appeal directly involves a substantial constitutional question. (*Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.,* 1 NY3d 85, 541 US 1009.) II. The convenience of the employer test is unconstitutional as applied to Mr. Huckaby because it taxes income out of all proportion to Mr. Huckaby's work sourced to, and benefits from, New York; his employer's benefits from New York are relevant only to New York's taxation of his employer—not Mr. Huckaby. (*Shaffer v Carter,* 252 US 37.) III. The convenience of the employer test violates due process by taxing income that clearly was not derived from New York State. (*Shaffer v Carter,* 252 US 37; *Hans Rees' Sons, Inc. v North Carolina,* 283 US 123; *Matter of British Land [Md.] v Tax Appeals Trib. of State of N.Y.,* 85 NY2d 139; *Moorman Mfg. Co. v Bair,* 437 US 267; *Norfolk & W. Ry. Co. v Missouri State Tax Commn.,* 390 US 317; *Trinova Corp. v Michigan Dept. of Treasury,* 498 US 358; *Wisconsin v J.C. Penney Co.,* 311 US 435; *International Harvester Co. v Wisconsin Dept. of Taxation,* 322 US 435; *Connecticut Gen. Life Ins. Co. v Johnson,* 303 US 77; *Matter of Allen [Commissioner of Labor],* 100 NY3d 282.) IV. The application of the convenience of the employer test to Mr. Huckaby violates the Equal Protection Clause by applying an arbitrary and irrational standard to determine which nonresidents cannot allocate any income outside the state. (*Harrah Ind. School Dist. v Martin,* 440 US 194; *Fitzgerald v Racing Assn. of Cent. Iowa,* 539 US 103; *Matter of Colleary v Tully,* 69 AD2d 922.) V. This Court's decision in *Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.* (1 NY3d 85 [2003]) was limited to its facts and did not reach the constitutionality of the convenience of the employer test in the unique context of a telecom-

muter whose principal job and place of business are outside New York. (*Matter of Speno v Gallman,* 35 NY2d 256; *Norfolk & W. Ry. Co. v Missouri State Tax Commn.,* 390 US 317; *Oklahoma Tax Commn. v Jefferson Lines, Inc.,* 514 US 175; *Moorman Mfg. Co. v Bair,* 437 US 267.) VI. The statute does not permit respondent Division of Tax Appeals to tax a nonresident on income that is compensation for services that are in fact performed outside the state. (*Matter of McNulty v New York State Tax Commn.,* 70 NY2d 788; *Matter of Linsley v Gallman,* 38 AD2d 367, 33 NY2d 863; *Matter of D.S. Alamo Assoc. v Commissioner of Fin. of City of N.Y.,* 71 NY2d 340; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *American Locker Co. v City of New York,* 308 NY 264; *Matter of Speno v Gallman,* 35 NY2d 256; *Matter of Burke v Bragalini,* 10 AD2d 654; *Matter of Burke v Murphy,* 33 AD2d 581; *Matter of Carpenter v Chapman,* 276 App Div 634; *Matter of Colleary v Tully,* 69 AD2d 922.) VII. Because the Division of Tax Appeals has disregarded its own published guidelines to force Mr. Huckaby to court, with no rational basis, Mr. Huckaby is entitled to his reasonable administrative and litigation costs.

*Eliot Spitzer, Attorney General,* Albany (*Julie S. Mereson, Caitlin J. Halligan, Daniel Smirlock* and *Andrew D. Bing* of counsel), for respondents. I. New York's taxation of all of Thomas Huckaby's income from his New York employment pursuant to the convenience test is consistent with constitutional norms governing taxation of nonresidents and with Tax Law § 601 (e) and § 631 (b). (*Oklahoma Tax Commn. v Chickasaw Nation,* 515 US 450; *International Harvester Co. v Wisconsin Dept. of Taxation,* 322 US 435; *Travis v Yale & Towne Mfg. Co.,* 252 US 60; *Brady v State of New York,* 80 NY2d 596, 509 US 905; *Shaffer v Carter,* 252 US 37; *Matter of Speno v Gallman,* 35 NY2d 256; *Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.,* 1 NY3d 85; *Matter of Linsley v Gallman,* 38 AD2d 367, 33 NY2d 863; *Quill Corp. v North Dakota,* 504 US 298.) II. The application of the convenience rule to Thomas Huckaby is consistent with the Due Process Clause. (*Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.,* 1 NY3d 85; *Moorman Mfg. Co. v Bair,* 437 US 267; *Wisconsin v J.C. Penney Co.,* 311 US 435; *Shaffer v Carter,* 252 US 37; *Matter of Tamagni v Tax Appeals Trib. of State of N.Y.,* 91 NY2d 530.) III. The application of the convenience rule to Thomas Huckaby does not violate his equal protection rights. (*Miriam Osborn Mem. Home Assn. v Chassin,* 100 NY2d 544; *Trump v Chu,* 65 NY2d 20; *Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356.) IV. Thomas Huckaby is not

entitled to administrative and litigation costs pursuant to Tax Law § 3030. (*Matter of Speno v Gallman,* 35 NY2d 256; *Matter of Colleary v Tully,* 69 AD2d 922; *Matter of Wheeler v State Tax Commn.,* 72 AD2d 878; *Matter of Kitman v State Tax Commn.,* 92 AD2d 1018, 59 NY2d 603; *Matter of Phillips v New York State Dept. of Taxation & Fin.,* 267 AD2d 927, 94 NY2d 763; *Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.,* 1 NY3d 85; *Matter of Carpenter v Chapman,* 276 App Div 634.)

## OPINION OF THE COURT

READ, J.

This appeal revisits New York's "convenience of the employer" test, which provides that when a nonresident is employed by a New York employer, income derived from work in another state is taxable by New York unless performed out of state for the necessity of the employer. Here, the taxpayer, a Tennessee resident who works for a New York employer, contends that the convenience test violates the statute that it implements as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. We disagree, and uphold the challenged tax as applied to this taxpayer.

### I.

Until 1991, petitioner Thomas L. Huckaby, a Tennessee resident, worked as a computer programmer for Multi-User Computer Solutions (MCS), a Tennessee employer engaged in the business of developing and selling computer software. In 1991, MCS underwent a reorganization, and petitioner's employment was terminated as a result. He was subsequently hired by the National Organization of Industrial Trade Unions (NOITU), an organization based in Jamaica, New York. NOITU had been an MCS client, and Huckaby had worked on NOITU matters while he was employed by MCS.

NOITU is an umbrella organization of industrial trade unions, which provides administrative services for its members. Petitioner's duties included supporting the software programs that MCS had developed for NOITU; assisting the computer department's manager in selecting new information technology; and, in general, meeting NOITU's programming needs.

NOITU and petitioner agreed that he would work primarily from his home in Tennessee, and would travel to the New York office only as needed to "gather guidelines for revision of exist-

ing or creation of new computer programs, and to instruct NOITU's New York personnel in their use." NOITU set up a long-distance data line to connect its Jamaica office to petitioner's Tennessee home office, where he also maintained a dedicated voice telephone line for business purposes and two computer terminals, which were eventually replaced with a personal computer and a printer. NOITU reimbursed petitioner monthly for office expenses, including telephone bills and supplies.

Petitioner concedes that he performed the bulk of his work for NOITU in Tennessee rather than in New York solely for personal reasons; NOITU did not require him to perform any work in Tennessee and would not have objected if he had worked out of its New York office. In 1994, petitioner split his time between NOITU's New York office, where he worked 59 days, and his Tennessee home office, where he worked 187 days. In 1995, he worked in NOITU's New York office for 62 days and in his Tennessee home office for 180 days. Thus, over this two-year period, petitioner spent roughly 25% of his workdays in New York and 75% of his workdays in Tennessee. He did not work in 1994 or 1995 for any person or any entity other than NOITU as either an employee or an independent contractor.

Petitioner timely filed 1994 and 1995 nonresident income tax returns with New York. He allocated his income between New York and Tennessee based on the number of days he worked in each state relative to the total number of days he worked in each tax year.

Upon subsequently auditing petitioner's 1994 and 1995 returns, the New York State Department of Taxation and Finance allocated 100% of his income to New York State and New York City and issued notices of deficiency. The Department explained that "[a]ny allowance claimed for days worked outside New York State must be based upon the performance of services which, because of the necessity of the employer, obligate the employee to out-of-state duties in the service of his employer. Such duties are those which, by their very nature, cannot be performed at the employer's place of business."

Petitioner paid the deficiencies under protest. After a conciliation conferee sustained the assessments, he took an administrative appeal seeking a refund. An administrative law judge sustained the notices of deficiency, and the Tax Appeals Tribunal affirmed. Petitioner then commenced this CPLR article 78 proceeding in the Appellate Division pursuant to Tax Law

§ 2016. The Appellate Division confirmed the administrative determination and dismissed the petition (6 AD3d 988 [3d Dept 2004]).

## II.

Tax Law § 601 (e) (1) imposes a tax on "income which is derived from *sources in this state* of every nonresident" (emphasis added). Section 631 (a) (1) of the Tax Law defines the "New York source income of a nonresident individual" as including "[t]he net amount of items of income, gain, loss and deduction entering into his federal adjusted gross income, as defined in the laws of the United States for the taxable year, *derived from or connected with New York sources*" (emphasis added). Tax Law § 631 (b) (1) (B), in turn, provides that "[i]tems of income, gain, loss and deduction derived from or connected with New York sources shall be those items attributable to: . . . (B) a business, trade, profession or occupation *carried on in this state*" (emphasis added).

The "carried on" language first appeared in the Tax Law in 1919, the year New York adopted an income tax (*see* L 1919, ch 627). The 1919 law imposed a tax on "the entire net income . . . from all property owned and from every business, trade, profession or occupation carried on in this state by natural persons not residents of the state" (former Tax Law § 351). The 1919 law also provided that "[i]n the case of taxpayers other than residents, gross income includes only the gross income from sources within the state" (former Tax Law § 359 [3]). Other sections provided for deductions (former Tax Law § 360), exemptions (former Tax Law § 362) and credits (former Tax Law § 363) for nonresidents. The United States Supreme Court in *Travis v Yale & Towne Mfg. Co.* (252 US 60 [1920]) vindicated New York's nonresident income tax from charges that it violated the Commerce, Due Process and Equal Protection Clauses.[1]

Petitioner contends that sections 601 and 631 of the Tax Law preclude New York from taxing income attributable to work that he carried out for his New York employer in his Tennessee home office. Nothing in the Tax Law's legislative history, however, indicates whether the Legislature intended business "carried on in this state" and "sources in this state" to refer to the location of the employee or of the employer. Petitioner's as-

---

1. The Court, however, held that an exemption that discriminated against nonresidents violated the Privileges and Immunities Clause (252 US at 80).

sumption that these phrases signify the employee's place of performance traces to a 1919 opinion of the Attorney General construing the phrase "sources [of income] within the State" (1919 Report Atty Gen 301). Attorney General Charles D. Newton opined that "[i]t seems to me that the work done, rather than the person paying for it, should be regarded as the 'source' of the income" (*id.*). He went on to conclude that "[w]here services are rendered partially within and partially without the State, the income therefrom should be divided *pro rata* into income from sources within and without the State" (*id.*).

In 1960, the Tax Law was recodified and reconfigured so as to allow taxpayers to use federal figures for their state returns (Message of Governor, 1960 McKinney's Session Laws of NY, at 2026). Section 601 and what later became section 631 were added and mirror, to a large extent, the language found in the predecessor statutes. Importantly, however, new language was folded into the latter as subdivision (c). This subdivision, referring to New York source income of nonresidents, states that

> "[i]f a business, trade, profession or occupation is carried on partly within and partly without this state, as determined under regulations of the tax commission, the items of income, gain, loss and deduction derived from or connected with New York sources shall be determined by apportionment and allocation under such regulations." (Tax Law § 631 [c].)

The Legislature thus recognized the complexities of administering an income tax for a nonresident who works both within and without the state, and left it up to the State Tax Commission, whose functions and duties in this regard were subsequently transferred to the Commissioner of Taxation and Finance (*see* L 1986, ch 282), to develop a rule for apportionment and allocation.

This rule, the convenience of the employer test, provides that

> "[i]f a nonresident employee . . . performs services for his employer both within and without New York State, his income derived from New York State sources includes that proportion of his total compensation for services rendered as an employee which the total number of working days employed within New York State bears to the total number of working days employed both within and without New

York State. . . . However, any allowance claimed for days worked outside New York State must be based upon the performance of services which of necessity, as distinguished from convenience, obligate the employee to out-of-state duties in the service of his employer" (20 NYCRR 132.18 [a]).

When the convenience test first came into use is obscure; however, it was embodied in regulation by 1960, the tax year at issue in *Matter of Speno v Gallman* (35 NY2d 256 [1974]).[2]

In *Speno*, we addressed the language "sources within the state" (former Tax Law § 632) in relation to the taxation of the income of the nonresident president of a company with offices in New York and abroad. We endorsed a "refinement" of the Attorney General's 1919 "place of performance" opinion. (*Speno* at 259.) That is, we accepted the Department's interpretation of the Tax Law in the convenience test, and held that "sources within the state" does not simply mean "place of performance." Rather, it calls for a more complicated analysis that takes into consideration why work is performed out of state. Our recent decision in *Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.* (1 NY3d 85 [2003], *cert denied* 541 US 1009 [2004]), which rejected challenges to the convenience test on federal due process and Commerce Clause grounds, was premised on our conclusion in *Speno* that the convenience test is a valid interpretation of the Tax Law.

Petitioner contends that while the convenience test as applied in *Speno* and *Zelinsky* may have comported with the Tax Law, his circumstances are different because he was not seeking to avoid or evade taxes. But our decisions in *Speno* and *Zelinsky* did not rest on any notion that these taxpayers were motivated to work at home to sidestep New York income tax liability. Further, although petitioner may not be in a position to commute physically into New York State each day to work,[3] he is the one who chose to accept employment from a New York employer (with the advantages of a New York salary and fringe benefits)

2. The convenience test was formerly found at 20 NYCRR 131.16 (*see Speno*). The policy, if not the regulation, appears to have been in place since at least 1951, the tax year considered in *Matter of Burke v Bragalini* (10 AD2d 654 [3d Dept 1960]).

3. The taxpayer in *Speno* was arguably also unable to commute physically to his employer's New York workplace daily; he lived in Summit, New Jersey and his company's New York offices were located upstate in Ithaca and Syracuse. The taxpayer in *Zelinsky* lived in Connecticut and commuted to work in Manhattan.

while maintaining his residence in Tennessee, some 900 miles and a two-hour plane trip distant from his New York employer's office.

In short, the statute facially evidences the Legislature's intent to tax nonresidents on all New York source income, and to task the Commissioner to develop a workable rule for apportioning and allocating the taxable income of nonresidents who work both within and without the state. The Commissioner has carried out his statutory responsibility by adopting the convenience of the employer test.

## III.

Petitioner's due process challenge to the convenience test relies principally on Supreme Court cases involving taxes on interstate businesses (*see e.g. Wisconsin v J.C. Penney Co.*, 311 US 435, 441 [1940] [upholding from due process challenge tax on the " 'privilege of declaring and receiving dividends, out of income derived from property located and business transacted in' Wisconsin"]; *Moorman Mfg. Co. v Bair*, 437 US 267 [1978] [upholding from due process challenge Iowa's "single-factor" formula for allocating interstate business income for tax purposes]; *Hans Rees' Sons v North Carolina ex rel. Maxwell*, 283 US 123 [1931] [invalidating under Commerce Clause tax on 84% of corporation's income where only 17% was sourced in North Carolina]). In *Matter of British Land (Md.) v Tax Appeals Trib. of State of N.Y.* (85 NY2d 139 [1995]), we summarized this multistate business case law as follows:

> "[A] formula-based tax on income may be struck down if the income attributed to the State is in fact out of all appropriate proportions to the business transacted [by the taxpayer] in that State or if application of the apportionment formula has led to a grossly distorted result. The taxpayer bears the burden of showing by clear and cogent evidence that [application of the formula] results in extraterritorial values being taxed" (*id.* at 146 [citations and internal quotation marks omitted]).

While instructive, these cases are not directly relevant to this appeal. Income derived from a business's interstate activities differs from income a nonresident earns from a New York employer—nonresidents do not implicate themselves or their employers in interstate commerce merely by working from home (*see Zelinsky*, 1 NY3d at 92-93), while interstate businesses are,

by definition, engaged in interstate commerce. In order for these interstate business precedents to bear on petitioner's due process challenge to the convenience rule, we must tease out their Commerce Clause implications.[4]

The dormant Commerce Clause "prohibits state taxation, or regulation, that discriminates against or unduly burdens interstate commerce and thereby imped[es] free private trade in the national marketplace" (*General Motors Corp. v Tracy*, 519 US 278, 287 [1997] [citations and internal quotation marks omitted]). A four-pronged test has developed over the course of the Supreme Court's Commerce Clause jurisprudence. A state tax on interstate commerce violates the dormant Commerce Clause unless it "is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State" (*Complete Auto Tr., Inc. v Brady*, 430 US 274, 279 [1977] [upholding under Commerce Clause "a state tax for the privilege of carrying on within a state, certain activities related to a corporation's operation of an interstate business" (*id.* at 274 [internal quotation marks omitted])]).

The Commerce Clause's requirement of fair apportionment has been said to be a "principle of fair share . . . which is threatened whenever one State's act of overreaching combines with the possibility that another State will claim its fair share of the value taxed" (*Oklahoma Tax Commn. v Jefferson Lines, Inc.*, 514 US 175, 184 [1995] [holding superseded by statute]). "[T]he central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction" (*Goldberg v Sweet*, 488 US 252, 260-261 [1989]).[5]

*Shaffer v Carter* (252 US 37 [1920]) is the Supreme Court's last decisive statement on a state's ability to tax the income of a

---

4. We note that petitioner does not claim that application of the convenience rule in his case violates the Commerce Clause.

5. The "threat" of misapportionment is measured by two factors—internal and external consistency. "Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear" (*Oklahoma Tax Commn.*, 514 US at 185). External consistency looks to "the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State" (*id.*). The external consistency test asks "whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed" (*Goldberg*, 488 US at 262).

nonresident as opposed to a business engaged in interstate commerce. There, the Court held that "just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, or their occupations carried on therein" (*id.* at 52).

Petitioner contends that the convenience rule violates due process because he is taxed out of all proportion to the benefits that he receives from New York. Accordingly, he asks us to engraft a proportionality requirement upon existing due process precedent. The Supreme Court, however, has established distinct Commerce Clause and due process restraints in its state taxation rules. Specifically, the Court has stated that the dormant Commerce Clause is "a means for limiting state burdens on interstate commerce" (*Quill Corp. v North Dakota*, 504 US 298, 313 [1992]). It is in this context that the apportionment standard was developed. If a state overreaches by taxing an activity that another state is also justified in taxing, the burden placed on interstate commerce is too great to withstand constitutional scrutiny.

Due process, on the other hand, is "a proxy for notice" (*id.*) and looks to the connection that must be present between the taxpayer and the taxing state before the state has authority to impose its power to tax (*see Northwestern States Portland Cement Co. v Minnesota*, 358 US 450 [1959]; *Quill*, 504 US 298 [1992], *supra*). All that is required to satisfy due process is some "minimal connection" between the taxpayer and the state, and that the income the state seeks to tax be "rationally related to values connected with" the state (*see Moorman Mfg. Co.*, 437 US at 273 [internal quotation marks omitted]).

As the Commissioner argues, the convenience test is, in effect, a surrogate for interstate commerce. Where work is performed out of state of necessity for the employer, the employer creates a nexus with the foreign state and essentially establishes itself as a business entity in the foreign state. This nexus is often enough to expose the employer to corporate and sales and use taxes in the foreign state (*see e.g. Amerada Hess Corp. v Director, Div. of Taxation, N.J. Dept. of Treasury*, 490 US 66, 73 [1989] [finding substantial nexus between state and income from oil company's oil production which occurred entirely without the state because oil company had some opera-

tions in state and was a "unitary business"]). The convenience test stands for the proposition that New York will not tax a nonresident's income derived from a New York employer's participation in interstate commerce because in such a case, the nonresident's income would not be derived from a New York source.

In *Zelinsky*, we found the minimal connection called for by due process on account of the taxpayer's "physical presence in New York and because he . . . purposefully avail[ed him]self of the benefits of an economic market in" New York (*Zelinsky*, 1 NY3d at 97 [internal quotation marks omitted]). Here, petitioner objects that, read and applied literally, the convenience of the employer test would allow New York to tax 100% of the income of a nonresident who worked out of his employer's place of business in New York just one day a year. He argues that due process demands proportionality in order to prevent this presumed overreaching. Whether due process would countenance this particular result—taxation of 100% of the income of a nonresident who spends a trivial amount of time working in New York—is simply not before us. We conclude that the minimal connection required by due process plainly exists in this case where petitioner accepted employment from a New York employer and worked in his employer's New York office approximately 25% of the time annually. Moreover, the amount of time that petitioner spent working in New York—25%—is significant enough to satisfy any rough proportionality requirement called for by due process.

As to whether New York's taxation of 100% of the nonresident's income was "rationally related" to values connected with the state, in *Zelinsky* we noted the "host of tangible and intangible protections, benefits and values" New York provided to the taxpayer and his employer, and that these benefits were provided every day, regardless of whether the taxpayer chose to absent himself from New York (*id.* at 95). "New York may require contributions from [the taxpayer] because he thus realiz[ed] current pecuniary benefits under the protection of the government, and *the tax imposed need not bear an exact relation* to the services actually provided to the individual taxpayer" (*id.* [emphasis added, citations and internal quotation marks omitted], quoting *Matter of Tamagni v Tax Appeals Trib. of State of N.Y.*, 91 NY2d 530, 544 [1998]). Certainly, the same may be said of petitioner.

Under the convenience of the employer test, New York taxes a nonresident employee's income from a New York employer

except to the extent the income is connected with the employer's participation in interstate commerce. By taxing only income sourced to New York, the convenience test is rationally related to values connected with New York because New York has the right to tax 100% of a nonresident employee's income derived from New York sources. Where a nonresident employee must perform work out of state for the employer's necessity, a nexus is created between the employer and the foreign state. New York does not tax the nonresident employee's income derived from these activities, which are properly sourced to the foreign state. Thus, the convenience test constitutes an across-the-board standard designed to comply with both due process and the Commerce Clause.[6]

## IV.

*Nordlinger v Hahn* (505 US 1 [1992]) established the equal protection standard for tax cases:

> "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision-maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational" (*id.* at 11 [citations omitted]).

Further, "[a]bsolute equality is impracticable in taxation, and is not required by the equal protection clause . . . . [I]nequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law" (*Maxwell v Bugbee*, 250 US 525, 543 [1919]).

Petitioner argues that the convenience test impermissibly discriminates between those employees who work out of state for personal convenience and those who work out of state as a

---

6. The dissent fails to acknowledge the two factors that drive our analysis and our conclusion that due process is not offended when New York taxes all of petitioner's income from his New York employer. First, nonresident individuals are simply not the same as interstate businesses, and these differences must be taken into account when considering whether a tax meets with due process. Second, the purposes and scope of the Due Process and Commerce Clauses are not coextensive and, as the Supreme Court has held, a tax can burden interstate commerce without violating due process (*see Quill*).

necessity. New York distinguishes between these two classes of nonresidents because by doing so, it properly taxes nonresidents only on income sourced to New York, and, concomitantly, avoids taxing income derived from interstate commerce. This classification, which is designed to comply with both the Commerce Clause and the Due Process Clause, is therefore rational in every respect.

Petitioner criticizes the convenience test as unfair and unsound as a matter of tax policy and a discouragement to telecommuting. Maybe so. We do not view it as our role, however, to upset the Legislature's and the Commissioner's considered judgments so long as the convenience test has been constitutionally applied in this case. For all the reasons given, we conclude that the convenience test as applied to petitioner complies with the requirements of due process and equal protection.

Finally, we agree with the Appellate Division that petitioner is not a prevailing party entitled to recover litigation and administrative costs pursuant to Tax Law § 3030. Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

R.S. SMITH, J. (dissenting). The issue here is to what extent the salary paid by a New York employer to a resident of another state who works most of his time outside, and beyond commuting distance from, New York is subject to New York State income tax. The majority holds that 100% of the employee's income is taxable in New York, so long as (1) any significant part of the employee's work is performed in New York and (2) the employer does not require the employee to work outside New York. I dissent, because I believe that the application of this rule to this case is contrary to the Tax Law, and that the Tax Law as interpreted by the majority violates the Due Process Clause of the United States Constitution.

I

Tax Law § 601 (e) (1) imposes a tax on "the taxable income which is derived from sources in this state" of nonresident individuals. Tax Law § 631 uses the words "New York source income," "income . . . from New York sources" and "income . . . derived from . . . New York sources" to identify the same concept. These interchangeable terms are defined by Tax Law § 631 (b) (1), which lists four categories of "New York source income"; only one of the four is relevant to this case. Tax Law

§ 631 (b) (1) (B) includes as "New York source income" that income which is "attributable to . . . a business, trade, profession or occupation carried on in this state." The statutory issue in this case is how much of Thomas Huckaby's income is in that category.

Huckaby argues that, since only 25% of his "business, trade, profession or occupation" is "carried on in this state," only 25% of his income is subject to tax under the Tax Law. The Commissioner seeks to tax 100% of it, relying on the "convenience" regulation (20 NYCRR 132.18 [a]), which provides that income will be allocated to New York in proportion to the days worked there, but that "any allowance claimed for days worked outside New York State must be based upon the performance of services which of necessity, as distinguished from convenience, obligate the employee to out-of-state duties in the service of his employer." I think the convenience rule as applied to Huckaby is inconsistent with the Tax Law, because the rule does not here, as it does in other cases, serve the legitimate purpose of avoiding manipulation or fraud; and because there is no other good reason for attributing the part of Huckaby's income that is earned in Tennessee to "a business, trade, profession or occupation carried on in this state." Thus, I would hold that Huckaby is correct in asserting that only 25% of his income is taxable in New York.

We have previously upheld the application of the Commissioner's convenience rule to permit New York to tax income paid for work done outside New York (*Matter of Speno v Gallman*, 35 NY2d 256 [1974]; *Matter of Zelinsky v Tax Appeals Trib. of State of N.Y.*, 1 NY3d 85 [2003]). *Speno* and *Zelinsky* rest, however, on the proposition that an employee's discretionary decision to do work at home rather than in the office should not have significant tax consequences; if the rule were otherwise, the door would be open to abuse. This rationale does not support the application of the Commissioner's rule to Huckaby.

The taxpayer in *Speno*, Frank Speno, Jr., was employed as president of the Frank Speno Railroad Ballast Cleaning Co., Inc., which had its principal office in Ithaca, New York. He lived in Summit, New Jersey. In his 1960 and 1961 tax returns, he claimed to have worked 106 days at his home in 1960, and 174 days in 1961. We observed that "the work performed at home in New Jersey consisted essentially of making phone calls. No business calls were received on the unlisted [New] Jersey number, and Mr. Speno entertained no business contacts in

New Jersey" (35 NY2d at 258). In upholding the application of the "convenience" test to reject Speno's allocation of income to his days worked in New Jersey, we explained:

> "The policy justification for the 'convenience of the employer' test lies in the fact that since a New York State resident would not be entitled to special tax benefits for work done at home, neither should a nonresident who performs services or maintains an office in New York State." (*Id.* at 259.)

In *Zelinsky*, the taxpayer was a professor at Cardozo Law School who did all his teaching in New York City, and commuted there from his Connecticut home three days a week. On the other two days, "he stayed at home, where he prepared examinations, wrote student recommendations, and conducted scholarly research and writing" (1 NY3d at 89). He also "worked exclusively at home" when school was not in session, and when he was on sabbatical leave (*id.*). In rejecting his attempt to allocate much of his law school salary to work done outside New York, we noted that a contrary ruling would allow the taxpayer to manipulate the system. We said:

> "The convenience test was originally adopted to prevent abuses arising from commuters who spent an hour working at home every Saturday and Sunday and then claimed that two sevenths of their work days were non-New York days and that two sevenths of their income was thus non-New York income, and either free of tax (if the state of their residence had no income tax) or subject to a lower rate than New York's. In the present case, the taxpayer's efforts to reduce the amount of tax owed to New York on his New York source income earned during the work week raise similar concerns." (*Id.* at 92.)

Although there was no suggestion in either *Speno* or *Zelinsky* that the taxpayer was not telling the truth, of course not all taxpayers are so scrupulous. We noted in *Zelinsky* that "in the absence of the convenience test, opportunities for fraud are great and administrative difficulties in verifying whether an employee has actually performed a full day's work while at home are readily apparent" (*id.* n 4). We also remarked that "the test 'serves to protect the integrity of the apportionment scheme by including income as taxable' when the income results from ser-

vices derived from New York sources performed out-of-state 'to effect a subterfuge' (*Matter of Colleary v Tully*, 69 AD2d 922, 923 [3d Dept 1979])" (*Zelinsky*, 1 NY3d at 92 n 5).

In short, in *Speno* and *Zelinsky*, we justified the application of the "convenience" test on the ground that not to apply the rule would facilitate tax avoidance or evasion. That is not true here. Huckaby does not work in Tennessee to avoid New York taxes; he works there because that is where he lives. There is no undue difficulty in verifying his claim that three quarters of his working days are spent in Tennessee. While it might be said that he chooses to work in Tennessee for his own "convenience" in the sense that he could, if he wished, uproot his family and move to or near New York, a choice based on that sort of "convenience" is not subject to the sort of manipulation about which we expressed concern in *Speno* and *Zelinsky*.

Thus, the Commissioner cannot prevail here unless he offers some justification other than the prevention of abuse for treating 100% of Huckaby's income as "New York source income." He has not succeeded in finding such a justification.

The Commissioner argues that Huckaby's income comes from "a business, trade, profession or occupation carried on in this state" and is therefore "New York source income" on the ground that the business of Huckaby's *employer* is "carried on" in New York. The majority artfully avoids either embracing or rejecting this argument; it raises, but does not answer, the question of whether "the Legislature intended business 'carried on in this state' . . . to refer to the location of the employee or of the employer" (majority op at 432). I think the Commissioner's argument is completely untenable.

The natural and obvious reading of the words in Tax Law § 631 (b) (1) (B), "a business, trade, profession or occupation carried on in this state," is "a business, trade, profession or occupation" that is "carried on" *by the taxpayer*. As the majority notes (majority op at 432-433), these words were so read in an Attorney General's opinion contemporaneous with the enactment of the statute in 1919 (1919 Report Atty Gen 301 ["'(T)he work done, rather than the person paying for it, should be regarded as the 'source' of the income"]). We endorsed this reading in *Matter of Oxnard v Murphy* (15 NY2d 593 [1964], *affg on op below* 19 AD2d 138, 140 [3d Dept 1963]; *see also Matter of Linsley v Gallman*, 38 AD2d 367, 370 [3d Dept 1972], *affd* 33 NY2d 863 [1973]; *Matter of Hayes v State Tax Commn.*, 61 AD2d 62, 63 [3d Dept 1978]).

Yet the Commissioner, without citing authority, and ignoring our decision in *Oxnard*, asserts that "in determining whether a nonresident *employee* who works both inside and outside New York is earning income from New York sources, the business 'carried on' in New York refers to the business of the employer" (emphasis added). The Commissioner does not dispute that, as to nonemployees—i.e., independent contractors—the location of the taxpayer's work is dispositive. The Commissioner's theory not only contradicts the apparent meaning of the statute and our prior interpretation of it; it is riddled with logical flaws.

First, what language in the statute even hints at a distinction between employee taxpayers and others of the kind the Commissioner advocates? Secondly, what indication is there in the background or legislative history of the statute that the Legislature had any such intention? Thirdly, if the relevant location is that of the employer and not the employee, why does the Commissioner's own regulation make the place of performance of the employee's duties the governing factor, as a general rule to which the "convenience" test is an exception? And finally, if he really believes his reading of the statute is sound, why does the Commissioner not carry it to its logical conclusion, by trying to tax the salaries of all out-of-state employees of New York-based firms?

The Commissioner attempts to answer only the last of these questions, and his answer to that one is completely unpersuasive. He suggests that taxing employees who work out of state for reasons other than convenience might violate the Commerce Clause, but he does not support this suggestion with either reasoning or authority. (The majority, in dealing with the constitutional issue in this case, adopts a version of the Commissioner's "Commerce Clause" theory, which I discuss below.)

In short, the view that "carried on in this state" means "carried on by the taxpayer's employer" is without merit. Thus, the only two possible rationales for treating all of Huckaby's income as "New York source income" within the meaning of the statute—the "avoidance of abuse" rationale and the "location of the employer" rationale—clearly fail. The majority upholds the Commissioner's position here without approving either of these two rationales for it, and without suggesting a third one. The majority makes no attempt to offer any justification, in the words of the statute or in the policy underlying it, for holding that 100% of Huckaby's income is taxable in New York.

The majority's sole ground for holding that Huckaby's income is "New York source income" is that the Commissioner says it is. The majority says that the Legislature "recognized the complexities" of taxing those who work both within and outside the state (majority op at 433), and "task[ed] the Commissioner to develop a workable rule" (majority op at 435). No doubt. But the Commissioner's rule is still supposed to make sense (*New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166 [1991] [a state regulation should be upheld only if it has a rational basis and is not unreasonable, arbitrary, capricious or contrary to the statute under which it was promulgated]; *Matter of Jones v Berman*, 37 NY2d 42, 53 [1975] ["(a)dministrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute"]). As applied to Huckaby, the Commissioner's convenience rule does not make sense.

I would hold that only 25% of Huckaby's income is "New York source income" within the meaning of the Tax Law.

## II

Since the majority holds that the Tax Law permits New York to tax the 75% of Huckaby's income that he earned by work done in Tennessee, the Court must decide whether the Tax Law, as so interpreted, is valid under the Due Process Clause. I would hold that it is not, and I therefore dissent on constitutional as well as on statutory grounds.

The basic due process limitation on a state's taxing power is that jurisdiction to tax is limited by the state's borders. To take a simple example, it would be an obvious violation of the Due Process Clause if New York sought to levy a real property tax on the Tennessee home in which Huckaby lives. Or, to move a step closer to this case, if Huckaby owned four parcels of real property—one in New York and three in Tennessee—due process would permit New York to collect real property tax only on the New York property, not on the other three. Huckaby's argument is, essentially, that an income tax on his salary is subject to a similar limitation, and that New York is free to tax only the one quarter of his salary that he earns in New York. I believe this argument is correct.

As we noted in *Zelinsky*, under the Due Process Clause "[a] state . . . may not tax value earned outside its borders" (1 NY3d at 96, citing *Allied-Signal, Inc. v Director, Div. of Taxation*, 504 US 768, 777 [1992]). This general principle has been

implemented by a two-part test, which we summarized in *Zelinsky* as follows:

> "The Due Process Clause places two restrictions on a state's power to tax income generated by interstate activities. First, it 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax' (*Quill Corp. v North Dakota*, 504 US 298, 306 [1992] [citation omitted]). Second, the 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State' (*Moorman* [*Mfg. Co. v Bair*], 437 US [267,] at 273 [1978] [citation and internal quotation marks omitted])." (1 NY3d at 96.)

The first part of the two-part test is met here. Huckaby works one quarter of his time in New York, and therefore has a "minimum connection" to the state. Huckaby does not challenge New York's power to tax him. Rather, relying on the second part of the test, he challenges the State's power to tax more than the one quarter of his income earned in New York. He argues that a tax on 100% of his income is not "rationally related to" the 25% of his time spent working in the state.

United States Supreme Court precedent, and our own, establish that a tax is not "rationally related to values connected with the taxing State" unless it bears some reasonable proportion to those values. Thus in *Hans Rees' Sons v North Carolina ex rel. Maxwell* (283 US 123 [1931]), the Supreme Court held that North Carolina's income tax was invalid under the Due Process Clause as applied to a particular taxpayer because the state taxed as much as 85% of the taxpayer's income, of which only some 17% was attributable to that state. The Supreme Court said:

> "It is sufficient to say that, in any aspect of the evidence, and upon the assumption made by the state court with respect to the facts shown, the statutory method, as applied to the appellant's business for the years in question operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income *out of all appropriate proportion* to the business transacted by the appellant in that state. In this view, the taxes as laid were beyond the state's authority. *Shaffer* v. *Carter*, 252 U.S. 37, 52, 53, 57." (283 US at 135 [emphasis added].)

The existence of a proportionality requirement under the Due Process Clause was reaffirmed in *Moorman Mfg. Co. v Bair* (437 US 267 [1978]). The Court upheld the tax in that case, noting that "the States have wide latitude in the selection of apportionment formulas," but, quoting from *Hans Rees' Sons*, said that a tax is invalid under the Due Process Clause where "the income attributed to the State is in fact 'out of all appropriate *proportion* to the business transacted . . . in that State' . . . ." (437 US at 274 [emphasis added]; *see also Zelinsky*, 1 NY3d at 97 [incorporating by reference into Due Process Clause analysis aspects of our analysis under the Commerce Clause].) Thus I see no basis for the majority's suggestion that the Due Process Clause does not require proportionality (*see* majority op at 437 [Huckaby "asks us to engraft a proportionality requirement upon existing due process precedent"], at 438 ["any rough proportionality requirement called for by due process"]).

It also seems to me beyond question that the tax in this case—applied to 100% of Huckaby's income—is out of all proportion to the time he spent working in New York—25%. Again, I see no basis for the majority's view that, while it might be disproportionate to tax 100% of Huckaby's income if he spent only a "trivial" percentage of his time in New York, "the amount of time that petitioner spent working in New York—25%—is significant enough to satisfy any rough proportionality requirement . . . ." (Majority op at 438.) I do not think it can plausibly be argued that, while 1% would not be close enough to 100% to be "proportional," 25% is close enough. Even if this proposition were not indefensible on its face, it is surely inconsistent with the Supreme Court's holding in *Hans Rees' Sons* that 17% was not close enough to 85%.

As I read the majority opinion, it does not rely primarily on the unsupportable argument that the Due Process Clause's requirement of proportionality is either nonexistent or so weak that 25% can be called roughly equivalent to 100%. The main basis for the majority's holding that a tax on 100% of Huckaby's income is "rationally related to values connected with" New York is the majority's theory that the entity that pays Huckaby's salary, his employer, is a "value" on which jurisdiction to tax may be based, and this "value" is located 100% in New York. This theory, unsupported by any precedent, is a radical departure from long-accepted limits on the powers of states to tax nonresidents.

Since state income taxes on nonresidents were first upheld in *Shaffer v Carter* (252 US 37 [1920]), such taxes have been levied on income derived either from work done within the state, or from property located in, or sent into, the state. I am aware of no case in which it has been held, or even argued, that an in-state source of payment for services done outside the state is a constitutionally valid basis for taxing the recipient of the payment. Nor am I aware of any state statute—other than New York's Tax Law as interpreted by the majority in today's decision—that attempts to levy nonresident income tax on this basis. This obviously does not reflect any reticence by states in seeking to collect taxes; they are not reticent. A statement issued by the Multi-State Tax Commission contains the unsurprising assertion: "It is the policy of the state signatories hereto to impose their net income tax, subject to State and Federal legislative limitations, to the fullest extent constitutionally permissible" (Statement of Information Concerning Practices of Multistate Tax Commission and Signatory States under Public Law 86-272 [July 29, 1994], 1 Hellerstein and Hellerstein, State Taxation, at App D-1 [3d ed]).

Until today's decision, it has been universally assumed that an in-state entity that pays a taxpayer's salary is not, in itself, in-state "value" for due process purposes. The majority's departure from this assumption has potentially troubling consequences. If the location of a taxpayer's employer is taxable "value," there is no reason in principle why New York may not tax all out-of-state employees of New York firms—for example, a New York company's California sales manager, or a secretary who works in a New York law firm's Boston office. And other states can return the compliment, applying their own income taxes to New York residents who work for firms headquartered in California or Massachusetts. The result could be "an inequitable and perhaps ruinously overlapping scramble" for tax dollars (*see American Ins. Assn. v Lewis*, 50 NY2d 617, 624 [1980]).

The majority, perhaps aware of this danger, seemingly feels a need to limit the implications of its holding that an employee is subject to income tax in the state where his employer is located. Thus the majority, if I am correctly interpreting its opinion, comes up with a novel Commerce Clause theory as a companion to its novel due process theory. The Commerce Clause, the majority seems to be saying, will prevent states from taxing in-state companies' out-of-state employees—except those employees who, like Huckaby, work outside the state for their own

"convenience." In other words, the majority advances a rule of constitutional law that is identical to the Commissioner's convenience regulation. As the majority puts it, "the convenience test is, in effect, a surrogate for interstate commerce" (majority op at 437).

The majority cites no authority at all, and offers no persuasive reason, in support of this new interpretation of the Commerce Clause. It may be true that, "[w]here work is performed out of state of necessity for the employer, the employer creates a nexus with the foreign state," which may be "enough to expose the employer to corporate and sales and use taxes in the foreign state" (majority op at 437). But why should this have any impact on the power of the employer's home state to levy income tax on nonresident employees? What is the source of, or the reason for, a rule that says, in effect: "If Tennessee can tax a New York company, New York loses the right to tax that company's Tennessee employees"? It is simply not true that, as the majority suggests, "in such a case, the nonresident's income would not be derived from a New York source" (majority op at 438). On the contrary, the majority's assumption that the New York company is involved in interstate commerce would if anything support the argument that the company's Tennessee employees are getting income from a New York source. The word "interstate" seems to imply a source in one state and a recipient in another.

It is evident, I suggest, that the majority's constitutionalizing of the Commissioner's convenience rule is based on a different kind of "convenience": it conveniently allows New York State to tax telecommuters like Huckaby. I see no other basis for rules of constitutional law to the effect that (1) due process permits a state to tax income earned out of state by nonresident employees of local employers, but (2) the Commerce Clause forbids such taxation except where the employee works out of state for his own convenience. I believe the majority errs in adopting these rules.

## III

Accordingly, I would reverse the order of the Appellate Division and hold that the Commissioner may not tax that portion of Huckaby's salary earned outside the State of New York.

Chief Judge KAYE and Judges ROSENBLATT and GRAFFEO concur with Judge READ; Judge R.S. SMITH dissents and votes to reverse in a separate opinion in which Judges G.B. SMITH and CIPARICK concur.

Judgment affirmed, with costs.